

Office of the Solicitor General
Office 614-466-8980
Fax 614-466-5087

April 19, 2021

Office of the Clerk
United States Court of Appeals for the Sixth Circuit
540 Potter Stewart U.S. Courthouse
100 E. Fifth Street
Cincinnati, Ohio 45202-3988

    Re:  <u>Invited Letter Brief in *Harrison v. Montgomery County, Ohio*, No. 20-4051</u>

Dear Ms. Hunt:

    Below is a brief in response to the Court's invitation on March 16, 2021.

## Introduction

Ohio Attorney General Dave Yost answers the Court's questions about Ohio's Alternative Redemption Statutes as follows.

1. The Alternative Redemption Statutes provide that, in some situations, the title to real property held by a tax-delinquent owner is automatically transferred to political subdivisions or land banks. The owner can challenge the transfer; the Statutes apply only to abandoned tax-delinquent property; and the Statutes allow title transfer *only* after the property owner is served and given the opportunity to avoid forfeiture by paying the taxes that he owes. Do the Statutes violate the Takings Clause?

   No, they do not. The Takings Clause does not free property owners of the obligations that accompany property ownership. For example, property owners must adhere to deed-recording and tax laws, and their property rights may be forfeited should they fail to comply with those laws. Consistent with that understanding, the Supreme Court has turned aside Takings Clause challenges to statutes under which owners who failed to register their interests in subsurface minerals, *Texaco, Inc. v. Short*, 454 U.S. 516 (1982), or who failed to pay city water bills, *Nelson v. New York*, 352 U.S. 103 (1956), forfeited their property rights. It follows from these decisions that Ohio's Alternative Redemption Statutes do not violate the Takings Clause.

2. Can a property owner aggrieved by a proposed title transfer under Alternative Redemption Statues raise, in state-court transfer proceedings, a Takings Clause challenge to the transfer?

   Yes. Tax-delinquent landowners have a right to appeal any proposed transfer, and they may raise a Takings Clause challenge in those appeals. Indeed, the right to appeal an adverse decision under the Alternative Redemption Statutes is broader than most Ohio administrative appeals because it is not confined to the administrative record. Instead, these tax-delinquency appeals may include "issues that are raised for the first time on appeal." Ohio Rev. Code §323.79. Property owners are free to raise a takings challenge to any application of the Alternative Redemption Statutes with which they disagree—they may even raise a facial challenge to the Statutes' constitutionality. *Cf., e.g.*, *State ex rel. Kerns v. Simmers*, 153 Ohio St. 3d 103, 106 (2018).

3. Under Ohio law, is a tax-delinquent owner who takes no appeal of a title's transfer barred by *res judicata* from later raising a Takings Clause claim?

The answer is yes. As just discussed, a tax-delinquent owner may raise a takings claim in an appeal from a judgment authorizing transfer of the property's title. A tax-delinquent owner who forgoes the chance to challenge the transfer on Takings Clause grounds cannot later attack that judgment collaterally in state or federal court in a new lawsuit; under Ohio law, any issue that could have been raised earlier is barred by *res judicata*. *See Carroll v. City of Cleveland*, 522 F. App'x 299, 305-06 (6th Cir. 2013).

## Statement

Ohio law allows county boards of revision to handle tax-foreclosure proceedings for abandoned land. *See* 151 Ohio Laws, Part IV, 7334 (codified in relevant part in Ohio Rev. Code §§323.65–.79). "These proceedings are designed to be an expeditious alternative to conventional judicial foreclosures," as they allow boards of revision "to order the sheriff to transfer property directly to a county land-reutilization corporation (or some other statutorily eligible political subdivision), without the need for an appraisal and public auction." *State ex rel. Feltner v. Cuyahoga Cnty. Bd. of Revision*, 160 Ohio St. 3d 359, 359 (2020) (plurality op.), *cert. denied*, No.20-567, __ S. Ct. __, 2021 U.S. LEXIS 1714 (March 29, 2021); *see, e.g.*, *Yemma v. Reed*, 86 N.E.3d 980, 983 (Ohio Ct. App. 2017) (one example of these statutes in operation).

Although a county treasurer may initiate these procedures in a local county board of revision, Ohio Rev. Code §§323.69–.70, either the taxpayer or the board may transfer the case to a common-pleas or municipal court. Ohio Rev. Code §323.691. The transfer to court is mandatory if the taxpayer timely requests it. *See id.* §323.70(B).

Whatever the forum, Ohio law gives tax-delinquent real-property owners many opportunities to avoid forfeiture. Tax-delinquent owners may, for example, avoid forfeiture by paying the overdue taxes and related costs at any time during the redemption period. *Id.* §323.72. Owners are informed of this right in the summons that accompanies a foreclosure proceeding. *Id.* §323.69(B)(1). This summons is served through the same rules used in civil litigation. *Id.* §323.66(C). The redemption period for this process—and so the time in which to pay any overdue

taxes—extends twenty-eight days beyond the order confirming foreclosure. *Id.* §323.65(J) & .78. At the end of it all, owners have a right to appeal any decisions affecting the title transfer. *Id.* §323.79. Owners may press their cases all the way through Ohio's court system. Then they can seek relief in the Supreme Court of the United States based on any properly preserved federal issue.

Alana Harrison and a purported class challenge the Ohio Alternative Redemption Statutes under the federal Takings Clause. Ohio Attorney General Dave Yost offers this brief at the Court's invitation.

## Argument

Settled principles of Article III dictate the order of operations here. The Takings Clause claim is a constitutional challenge to an Ohio statute. And Article III courts should not decide constitutional questions "unless such adjudication is unavoidable." *Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944); *see Dep't of Commerce v. United States House of Representatives,* 525 U.S. 316, 343 (1999); *Ashwander v. TVA*, 297 U.S. 288, 346–47 (1936) (Brandeis, J., concurring). So the analysis here should start with whether Harrison's Takings Clause claim is barred by *res judicata*. If it is, the Court should not decide the constitutional question. This brief will proceed in that order.

I. **Ohio *res judicata* law bars Harrison's federal Takings Clause claim because she failed to raise that claim in prior state proceedings.**

"From well before our country's founding, judicial tribunals have recognized the need for doctrines like claim preclusion (or 'res judicata') … to protect the finality of their judgments and prevent parties from relitigating the same disagreement in perpetuity." *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 490 (6th Cir. 2021). Takings claims are subject to the same preclusion rules. And those preclusion rules bar Harrison's claims in federal court.

All agree here that Harrison and those in the class she aims to represent did not press takins claims in the relevant county boards of revision, in common pleas courts, or on further appeal from either tribunal. Every party appears to agree that, *if* Harrison (and the putative class members) had a right to raise a takings claim in those state proceedings, *res judicata* bars them from raising the issue in collateral proceedings. So the first question is whether Ohio law allows tax-delinquent owners, whose land is foreclosed under the just-discussed procedures, to raise a Tak-

ings Clause argument in an appeal from any forfeiture carried out under those procedures. The answer to that question is yes.

As an initial matter, Ohio law controls the *res judicata* question. A federal statute says that "judicial proceedings … shall have the same full faith and credit in every court within the United States … as they have by law or usage in the courts of such State … from which they are taken." 28 U.S.C. §1738. And the Supreme Court has long read that language as requiring that federal courts look to the law of the place that rendered the potentially preclusive judgment. *See Migra v. Warren City School District Board of Educ.*, 465 U.S. 75, 81 (1984). Because the question here involves the preclusive effect of Ohio state-court proceedings, the answer comes from Ohio preclusion law.

Ohio follows the modern trend in applying res judicata to "quasi-judicial administrative proceedings." *State ex rel. Schachter v. Ohio Pub. Employees Retirement Bd.*, 121 Ohio St. 3d 526, 530 (2009); *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 381 (1995); *Girard v. Trumbull Cnty. Budget Comm'n*, 70 Ohio St. 3d 187, 193, (1994). And Ohio follows the modern definition of *res judicata*, too: the doctrine bars litigation of "any claim arising out of the transaction or occurrence" already resolved through "a valid, final judgment rendered upon the merits." *Grava*, 73 Ohio St. 3d at 382. A final judgment bars the subsequent action even if the plaintiff proposes to offer "evidence or grounds or theories of the case not presented in the first action," and *res judicata* applies even if the plaintiff seeks "remedies or forms of relief not demanded in the first action." *Id.* at 383 (citation omitted). Put another way, a claim is defined "in factual terms," so that it is "coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories," and "regardless of the variations in the evidence needed to support the theories or rights." *Id.* (citation omitted).

A straight application of these principles to Harrison's case shows that Ohio's *res judicata* doctrine forecloses Harrison from raising a federal Takings Clause claim in this case. Both the foreclosure proceeding and this federal case involve the same transaction—the transfer of title from Harrison to the Montgomery County land bank. Harrison could have invoked the Takings Clause in state proceedings, perhaps to defeat that transfer in the foreclosure proceeding—precisely what she now wants to use it for in this federal case. Indeed, parties can always, in order to block proposed administrative actions, raise constitutional issues. *See, e.g.,*

*Crutchfield Corp. v. Testa*, 151 Ohio St. 3d 278, 281 (2016). Even if an administrative body does not "have jurisdiction" to decide whether a statute violates the Constitution, an Ohio common-pleas court reviewing that administrative action does have the power to block unconstitutional administrative actions. *State ex rel. Kerns v. Simmers*, 153 Ohio St. 3d 103, 105–06 (2018). Thus, Harrison was free to raise her takings claim in state proceedings.

Two Ohio Supreme Court cases illustrate by analogy that, when a party does not raise a Takings Clause challenge in an administrative proceeding, *res judicata* prevents them from doing so later. In one case, a bar thought that an Ohio law banning indoor smoking constituted an uncompensated taking of its property. But the Ohio Supreme Court concluded that the bar gave up its backward-looking just-compensation claim for a taking by failing to raise that claim in an administrative proceeding from which it did not appeal. *Wymsylo v. Bartec, Inc.*, 132 Ohio St. 3d 167, 175 (2012). In another case, a landowner raised a takings challenge to an order consolidating underground oil-and-gas interests for extraction. When the landowner sued to compel an Ohio official to begin condemnation proceedings, the Ohio Supreme Court held that the owner forfeited that challenge by not appealing the administrative order. In turning aside the Takings Clause challenge, the court explained that, had the landowner prevailed in the administrative appeal, "[n]o taking would have occurred." *Kerns*, 153 Ohio St. 3d at 106.

To be sure, neither *Wymsylo* nor *Kerns* applied the *res judicata* doctrine. But each invoked a doctrine—either the administrative-exhaustion or absence-of-alternative-remedies doctrine—that bars future litigation even *absent* past litigation. These doctrines prevent litigants from "thwart[ing] the appellate process simply by ignoring it." *State ex rel. Cartmell v. Dorrian*, 11 Ohio St. 3d 177, 178 (1984). And so these doctrines block claims even when litigants bypass an earlier opportunity to raise a claim by doing nothing at all. *See, e.g.*, *Pivonka v. Corcoran*, ___ Ohio St. 3d ___, 2020-Ohio-3476 ¶24 (2020) (exhaustion); *State ex rel. Jones v. Husted*, 147 Ohio St. 3d 341, 341 (2016) (other remedies). If inaction can foreclose a Takings Clause claim, *incomplete action* challenging a title transfer but omitting a Takings Clause challenge can as well.

It should make no difference whether the foreclosure proceedings offered Harrison a process for obtaining compensation for the property she says was taken. The Takings Clause may be used to prevent the transfer of title altogether. *See,*

*e.g.*, *Horne v. Dep't of Agric.*, 569 U.S. 513 (2013). Several Ohio Supreme Court cases recognize this use of the Takings Clause or its Ohio equivalent. *See, e.g.*, *Home Builders Ass'n of Dayton v. City of Beavercreek*, 89 Ohio St. 3d 121, 123 (2000) (impact fee); *Holeton v. Crouse Cartage Co.*, 92 Ohio St. 3d 115, 116, 130 (2001) (subrogation interest), *superseded by* Ohio Rev. Code §§4123.93; 4123.931; *Cmty. Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals*, 66 Ohio St. 3d 452, 453 (1993) (land use regulations); *Karches v. Cincinnati*, 38 Ohio St.3d 12, 15 (1988) (same). If such a defensive use of the Takings Clause succeeds, "[n]o taking … occur[s]." *Kerns*, 153 Ohio St. 3d at 106. And that, from the landowner's perspective, is even better than just compensation.

Finally, even though an administrative appeal *itself* provided Harrison no avenue for securing just compensation, Ohio law permitted her to join a claim for compensation to her appeal from the administrative process. This Court held quite recently that Ohio law lets a litigant use the same action to "seek relief under *both*" Ohio's administrative appeal statute "and federal statutory law." *Lavon Moore v. Hiram Twp.*, 988 F.3d 353, 362 (6th Cir. 2021) (collecting cases). Ohio law, the Court explained, does not let litigants "isolate" their "§ 1983 claims from the doctrine of res judicata." *Id.* That case involved a substantive-due-process claim, but the Court has applied the same principle to bar consideration of a just-compensation claim that the plaintiff could have added in its already-completed state-court challenge to an administrative action. *Carroll v. City of Cleveland*, 522 F. App'x 299, 305-06 (6th Cir. 2013). In short, Harrison had no reason to delay her Takings Clause arguments until federal court.

\*

Because of Ohio's *res judicata* doctrine, a landowner must bring all defenses to a title transfer—including a Takings Clause defense—at the first opportunity. To raise the issue in state proceedings, all Harrison had to do was include, in her answer to the foreclosure action, an argument that transferring her title violated the Takings Clause. Because Harrison did not take that simple step, she cannot litigate the issue now.

## II.    If the Takings Clause claim is properly before this Court, it fails on the merits.

Even if the takings claim is not barred by *res judicata*, it fails on the merits. Simply put, the Takings Clause does not free landowners from having to follow state property-law obligations. Nor does it shield landowners from the state-law consequences of failings to fulfill those obligations.

Start with the bedrock principle that the Takings Clause does not create—but instead protects—property interests. *Phillips* v. *Wash. Legal Found.*, 524 U. S. 156, 164 (1998). From that principle it follows that the interests the Takings Clause protects are "determined by reference to existing rules or understandings that stem from an independent source such as state law." *Id.* (citation omitted); *Bd. of Regents of State Colleges* v. *Roth*, 408 U. S. 564, 577 (1972). Many laws determine the scope of property rights by requiring that owners take affirmative steps to avoid forfeiting existing rights. Such laws are part of "the restrictions that background principles of the State's law of property … already place upon land ownership." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1029 (1992); *cf. Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1008-09 (1984) (property rights are shaped by background law).

As far back as the founding, States required landowners to record title on pain of forfeiting their property interest to a subsequent *bona fide* purchaser. Courts have long recognized the "undoubted power of state legislatures to pass recording acts, by which the elder grantee shall be postponed to a younger, if the prior deed is not recorded within the limited time." *Jackson ex dem. Hart v. Lamphire*, 28 U.S. 280, 290 (1830). The Supreme Court has already opined that these statutes do not take property within the meaning of the Fifth Amendment. *Texaco, Inc. v. Short*, 454 U.S. 516, 528 (1982).

Of course, owners' obligations may extend beyond the original purchase. The Supreme Court rejected Takings Clause challenges to two laws that required owners to reassert claims to real property or else forfeit their property interests. The first case involved an Indiana statute that gave owners of subsurface mineral rights two years to assert an ongoing interest in unused property. The Court held that the law complied with the Takings Clause: "It is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no 'taking' that requires compensation." *Short*, 454

8

U.S. at 530. The other case involved a federal statute that required yearly affirmation of a mining claim on federal land. The penalty for noncompliance included forfeiting the claim. The Court saw no Takings Clause problem with the requirement: "Regulation of property rights does not 'take' private property when an individual's reasonable, investment-backed expectations can continue to be realized as long as he complies with reasonable regulatory restrictions the legislature has imposed." *United States v. Locke*, 471 U.S. 84, 107 (1985).

In yet another example, consider adverse possession by the government. In those transfers, it is the original owner's inaction that forfeits the property interest. Yet the high courts in many States have concluded that the government does not effectuate a taking when it acquires property by adverse possession. *Stickney v. City of Saco,* 770 A.2d 592 (Me. 2001); *Weidner v. State,* 860 P.2d 1205 (Alaska 1993); *State ex rel. A.A.A. Inv. v. Columbus*, 17 Ohio St. 3d 151 (1985); *Saguache v. Flickinger,* 687 P.2d 975 (Colo. 1984). As with other forms of forfeiture, the property owner's failure to act divests the owner of the interests it otherwise possessed. So, even though adverse possession "sounds, at first blush, like title by theft or robbery," Henry W. Ballantine, Title By Adverse Possession, 32 Harv. L. Rev. 135, 135 (1918), it has a "venerable place in the regulation of the use and ownership of real property." *Evanich v. Bridge*, 119 Ohio St. 3d 260, 261 (2008).

Consistent with all of this, the Supreme Court rejected a Takings Clause challenge to a statute similar to Ohio's Alternative Redemption Statutes. The statute foreclosed the property interests of those who failed to pay their water bills for four years. The Court saw no Takings Clause impediment to the foreclosure, given the owners' "absence of timely action to redeem or to recover any surplus" and the city's "adequate steps … to notify the owners of the charges due and the foreclosure proceedings." *Nelson v. City of N.Y.*, 352 U.S. 103, 110 (1956). Even though the City of New York ended up with property worth far more than the overdue charges, its process did not violate the Takings Clause. At least one state supreme court has distinguished *Nelson* by interpreting its own state constitution to afford more protection. *Thomas Tool Servs. v. Town of Croydon*, 761 A.2d 439, 442 (N.H. 2000). But that court's interpretation of a state constitutional provision provides little insight into the meaning of the Fifth Amendment.

Precedent points in favor of Ohio's law, but what if we look further back in history? There too, we find many examples showing that States could require

property owners to take some affirmative acts to avoid real-property forfeiture. "[E]arly American legislatures" passed serval laws imposing forfeiture for not following civil regulations of commercial activity. Caleb Nelson, *The Constitutionality of Civil Forfeiture*, 125 Yale L.J. 2446, 2472 (2016). These forfeiture laws included those aimed at real property and taxation. At the federal level, for example, the tax on liquor included a forfeiture provision against the real property involved if the taxes went unpaid. *See, e.g.*, *United States v. Distillery in W. FrontStreet*, 25 F. Cas. 866, 867 (D. Del. 1870). Examples at the state level include Virginia laws that imposed a "duty of the owners of lands to pay all taxes[,] … and in case of failure so to do, forfeiting to the commonwealth all right and title whatever of the parties in default." *Wild's Lessee v. Serpell*, 51 Va. 405, 408–09 (1853) (reversing lower court and enforcing forfeiture). The federal laws were of course subject to the Takings Clause of the Fifth Amendment. And the state laws were subject to analogous state-law restrictions. Yet no one seems to have detected a problem.

Follow the trail of history even further back and the result is the same. Many pre-Founding statutes in the colonies required affirmative acts to avoid real-property forfeiture. A New York law imposed forfeiture of all "right, title, and interest" if the owner did not use the land for three years from platting. I The Colonial Laws of New York from the Year 1664 to the Revolution, 44 (James B. Lyon 1894). A Virginia law imposed "forfeiture" for abandoning real property. I The Statutes at Large; Being a Collection of All the Laws of Virginia, 291 (Wm. Hening ed. 2d ed. 1823). And a law of the Plymouth Colony authorized the government to give mining rights to another if the owner did not work the mine. XI Records of Plymouth Colony: Laws 1623–1682, 37 (Wm. White 1861). These laws show that the "background" principles of property law in place when the People ratified the Fifth Amendment included the idea that even real property could be forfeited if the owner failed to take certain affirmative steps to retain ownership.

Despite all this, a procedure that yields the government more than the owner owes in taxes is disquieting. One Ohio Supreme Court Justice remarked that the process is "unsettling." *Feltner*, 160 Ohio St. 3d 359, 366 (Fischer, J., concurring). But those feelings may spring more from overlapping due-process problems in specific cases than from categorical Takings Clause problems. *Nelson*, for example started its analysis by ensuring that the property owners received adequate notice of the foreclosure. Process concerns are also on the minds of some U.S. Supreme

Court Justices when they raise doubts about a different kind of forfeiture—escheat. *See, e.g.*, *Taylor v. Yee,* 136 S. Ct. 929, 929–30 (2016) (Alito and Thomas, JJ., concurring in denial of certiorari). But this case, assuming no *res judicata* preclusion, is about the Takings Clause rather than process.

                    Respectfully Submitted,

                    DAVE YOST
                    Ohio Attorney General

                    */s/ Benjamin M. Flowers*
                    BENJAMIN M. FLOWERS*
                    Solicitor General
                     *Counsel of Record*
                    MICHAEL J. HENDERSHOT
                    Chief Deputy Solicitor General
                    30 East Broad Street, 17th Floor
                    Columbus, Ohio 43215
                    614-466-8980
                    614-466-5087 fax
                    bflowers@ohioattorneygeneral.gov

                    *Counsel for Ohio Attorney General*

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2021, the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Benjamin M. Flowers*
Benjamin M. Flowers
Solicitor General

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed R. App. P. 32 (f) and (g), I hereby certify that the foregoing brief complies with the page-length limitation of the Court's March 16, 2021 letter.

I further certify that the motion complies with Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Equity font.

/s/  Benjamin M. Flowers
Benjamin M. Flowers
Solicitor General